[In Bank.—October 30, 1883.]

## EX PARTE A. M. S. CARPENTER, ON HABEAS CORPUS.

CRIMINAL LAW — PERJURY — NOTARY PUBLIC — EVIDENCE — HABEAS CORPUS. — The petitioner appeared before a notary public to acknowledge the execution of a deed signed by one Bouchard as grantor. The notary having no personal knowledge of the petitioner, administered to him an oath, as a witness in his own behalf, for the purpose of determining whether he was the person who had signed the deed, and the petitioner testified that he was Bouchard, the person named in and who executed the deed. The petitioner having been committed by a magistrate to answer a charge of perjury in having falsely testified, seeks a discharge on habeas corpus. *Held*, that the notary had power to administer the oath to the petitioner as a witness in his own behalf, and his testimony being material and false, he is not entitled to a discharge, there being probable cause for holding him to answer.

APPLICATION for a writ of habeas corpus. The facts are stated in the opinion of the court.

*Tyler & Tyler,* for Petitioner.

McKEE, J. — The petitioner is held in custody by an order of commitment holding him to answer upon a charge of perjury. He complains that his imprisonment is illegal, because there was no evidence before the committing magistrate to sustain the charge, and no sufficient cause to believe him guilty.

The evidence upon which the order was made showed that between the hours of eight and nine o'clock on the night of the 21st of April, 1883, the petitioner appeared before a notary public in Solano County, to acknowledge the execution of a deed, which he then exhibited to the notary, signed by one E. Bouchard as the grantor therein named. The notary, having had no personal knowledge of the petitioner, administered to him an oath, as a witness in his own behalf, for the purpose of determining whether he was the person who had signed the deed which he wished to acknowledge; and the petitioner on oath testified that he was E. Bouchard, the person named in and who executed the deed. Upon that evidence the notary took the acknowledgment, certified to it, and returned the deed with his certificate annexed to the petitioner.

The identity of a party acknowledging the execution of an instrument is an essential fact to be found by the officer taking the acknowledgment; and it must be found by him from his personal knowledge of the person, or from satisfactory evidence of a witness; and when found it must be stated in the certificate of acknowledgment. In the proceeding before the notary the testimony given by the petitioner was therefore material, and the evidence before the committing magistrate showed that it was false. Being false, the act of taking the oath was an act coupled with an intent prejudicial to one or the other or both of the parties named in the deed, and the evidence made a sufficient cause to hold the petitioner to answer upon the charge of perjury, if the notary had authority to administer the oath.

There is no question that the notary was an officer legally authorized to take and certify acknowledgments to written

instruments, and to administer oaths and take testimony for that purpose. (§ 1181, Civ. Code, and § 2093, Code Civ. Proc.) His jurisdiction, it is true, is limited by law to cases in which he personally knows, or has satisfactory evidence on the oath or affirmation of a credible witness, that the person making the acknowledgment is the person who executed the instrument.

In the proceeding commenced by the petitioner the notary had jurisdiction; and, as the petitioner was unknown to him, he had authority to administer an oath to any credible witness for the purpose of ascertaining and determining the fact of the petitioner's identity with the grantor named in the deed before taking his acknowledgment; the question, therefore, arises, whether under such circumstances the petitioner was a competent witness, in his own behalf, to prove that he was the person described in and who had executed the deed.

By the Practice Act of 1850 all persons who were parties to an action or proceeding, or for whose immediate benefit the action or proceeding was prosecuted or defended, or who were the assignors of the things in action for the purpose of becoming witnesses, and all black and mulatto persons and Indians, in actions to which a white person was a party, were excluded from testifying. (§§ 304, 305, 306, Stats. 1850, p. 455.) And "no acknowledgment of any conveyance whereby any real estate was to be conveyed, or might be affected, could be legally taken, unless the person offering to make such acknowledgment was personally known to the officer taking the acknowledgment to be the person whose name was subscribed to the conveyance as a party thereto, or was proved to be such by the oath of a credible witness." The name of the witness was required to be inserted in the certificate of acknowledgment, and he had to be another than the grantor, for the grantor himself could not, at that time, as a witness in his own behalf, prove the execution of his deed. The deed had to be attested, and its execution could be proved only: "First, by the testimony of a subscribing witness; second, when all the subscribing witnesses were dead or could not be had, by evidence of the handwriting of the party and of at least one subscribing witness given by a credible witness to each signature." (Stats. 1850, pp. 249, 250.)

In 1851 the legislature declared all persons competent to

testify, except persons to an action or proceeding, or for whose immediate benefit the action or proceeding was to be prosecuted or defended, all persons of unsound mind, children under ten years of age, who appeared incapacitated to receive just impressions of facts and to relate them truly, and Indians or persons having one fourth or more of Indian blood, etc. (§§ 391, 392, 393, Stats. 1851, pp. 113, 114.) In 1854 the disqualification of a witness was extended to "all persons who had a present, certain and vested interest in the event of the action or proceeding"; and to all unpardoned convicts of felony. (Stats. 1854, pp. 466, 467.) Subsequently, by an act passed April 27, 1863, sections 391 and 392 of the Act of 1854 were so amended that the disqualification of interest in the action or proceeding was entirely removed; and it was enacted that "the parties to any action or proceeding were competent to give evidence either *viva voce* or by deposition, or in any other legal mode, as any other witness, in behalf of himself, or of any of the parties to the action or proceeding," except where the adverse party, or the party for whose immediate benefit the action or proceeding was prosecuted or defended, was the representative of a deceased person, and the facts to be proved transpired before his death. At the same time it was provided that "nothing contained in section 392 shall affect the laws in relation to the attestation of any instrument required to be attested." (Stats. 1863, pp. 701, 702.) The amendments of 1863 continued to be the law of the competency of witnesses until the Codes swept away nearly all of the disqualifications which had rendered persons incompetent. By sections 1879 and 1880 of the Code of Civil Procedure no person was excluded from testifying because of interest in the action or proceeding to which he was a party, nor because of conviction for crime, nor on account of race, color, or previous condition of servitude; all persons were declared competent to testify, except persons of unsound mind, children under ten years of age, who appeared incapable of receiving just impressions of facts, or of relating them truly, and parties to, or in whose behalf, an action or proceeding was commenced against an executor or administrator upon a claim or demand against the estate of a deceased person, and professional persons as to confidential communications made to them

in their professional character (§§ 1879, 1880, 1881, Code Civ. Proc.); and by section 1195 of the Civil Code it was provided that "proof of the execution of an instrument, when not acknowledged, may be made either:—

"1. By the party executing it, or either of them; or,

"2. By a subscribing witness; or,

"3. By other witnesses, in cases mentioned in section 1198."

At the time the petitioner appeared before the notary to acknowledge the deed, which was signed by E. Bouchard, whom the petitioner falsely personated, he was not within any of the exceptions enumerated in sections 1879 and 1880 of the Code of Civil Procedure; he was therefore a competent witness in his own behalf in the proceeding before the notary, to which he was a party; and when he testified falsely on the oath administered to him by the notary, he subjected himself to be proceeded against for perjury. "Every person who, having taken an oath that he will testify, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury." (§ 118, Pen. Code.) And it is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner (§ 121, Pen. Code), nor is the incompetency even of a witness any defense; it is sufficient that he did give such testimony. (§ 122, Pen. Code.)

It follows: "As the notary had jurisdiction in the proceeding before him to administer an oath to the petitioner, that the oath administered was judicial; and as the testimony of the petitioner given on oath was material to the proceeding and shown to be false, there was probable cause for holding him to answer upon the charge against him.

Writ dismissed and petitioner remanded.

Myrick, J., and Sharpstein, J., concurred.

Thornton, J., concurred in the judgment.

Ross, J., and McKinstry, J., dissented.