[Crim. No. 7907.   In Bank.   Jan. 24, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD FLOYD KETCHEL and THOMAS EDWARD SEARS, Defendants and Appellants.

Christian E. Markey, Jr., and Benjamin Dreyfus, under appointment by the Supreme Court, Munger, Tolles, Hills & Olson, Garry, Dreyfus & McTernan, Fay Stender and Donald L. A. Kerson for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

THE COURT. — Donald Floyd Ketchel and Thomas Edward Sears were found guilty of first degree murder and first degree robbery, and the jury imposed the death penalty for the murder. On appeal we reversed the judgments insofar as they related to the death penalty but affirmed them in all other respects. (*People* v. *Ketchel*, 59 Cal.2d 503 [30 Cal. Rptr. 538, 381 P.2d 394].)[1] Upon retrial the jury again returned verdicts of death. This appeal is now before us automatically under subdivision (b) of section 1239 of the Penal Code.

---

[1]H. B. Sears, a codefendant, was also found guilty of first degree murder and first degree robbery. He was sentenced to life imprisonment for the murder, and the judgment as to him was affirmed. (*People* v. *Ketchel*, *supra*, 59 Cal.2d 503.)

Appellants, in addition to making claims of error with respect to the second penalty trial, seek to have the remittitur recalled and the judgments as to guilt vacated. They contend, among other things, that confessions inadmissible under *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361], were admitted into evidence at their trial on guilt.

The evidence at the guilt trial is summarized in our prior opinion and need not be repeated here in detail. (*People* v. *Ketchel, supra,* 59 Cal.2d 503.) In brief, appellants were convicted of the robbery of employees at the Star Market in Monterey Park and of the murder of George Elder, a police officer who pursued them as they fled from the market.

The crimes were committed on June 9, 1961, and on June 15, 1961, Ketchel was arrested. Following his arrest he was interrogated by officers at police headquarters. The officers began the interrogation about 6:15 p.m. on the day of the arrest, and shortly after midnight Ketchel confessed to the robbery and the murder. The confession was made in response to questions such as whether he went to the Star Market to commit robbery, whether he displayed his gun to the cashier, and whether he fired at the man who pursued him. No attorney for Ketchel was present when he confessed. Evidence of the confession was admitted at the trial on guilt, as well as at the second penalty trial.

At the time Ketchel made the confession the two conditions prescribed in *People* v. *Stewart,* 62 Cal.2d 571, 577 [43 Cal. Rptr. 201, 400 P.2d 97], were met: Ketchel was under arrest, and a process of interrogations that lent itself to eliciting incriminating statements was undertaken. Under the doctrine in *Stewart* the accusatory stage had been reached, and since it does not appear that Ketchel had been advised of his rights to counsel and to remain silent before he confessed, or that he had otherwise waived those rights, we must conclude that the confession should not have been admitted into evidence. (*People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Sears,* 62 Cal.2d 737, 741-743 [44 Cal.Rptr. 330, 401 P.2d 938].)

Thomas Sears was apprehended in Phoenix, Arizona, and on June 17, 1961, three California law enforcement officers interrogated him at the jail there. At the outset of the questioning the officers asked him whether he was willing to relate his part in the robbery and the shooting of the police

officer in Monterey Park, and he replied that he was. He was asked questions such as whether a gun shown him was the one he used and why he fired at "the man in the street." During the interrogation he confessed to the robbery and the murder. No attorney for Sears was present when he confessed. Evidence of the confession was introduced at the trial on guilt, as well as at the second penalty trial.

Sears was advised at the interrogation that anything he said might be used against him in court, but it does not appear that he was advised of his rights to counsel and to remain silent.[2] Since the accusatory stage had been reached under the doctrine in *People* v. *Stewart, supra,* 62 Cal.2d 571, 577, and the record does not show that he had been advised of his rights to counsel and to remain silent, or that he had otherwise waived those rights, the confession should not have been admitted into evidence. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354; *People* v. *Sears, supra,* 62 Cal.2d 737, 741-743.)

The Attorney General contends that the judgments on the issue of guilt were final before the decision in *Escobedo* v. *Illinois, supra,* 378 U.S. 478, thereby precluding reversal on the ground of that decision. The judgments as to guilt were affirmed in May 1963, and after appellants' second penalty trial the United States Supreme Court rendered its decision in *Escobedo* on June 22, 1964.

*Escobedo* or *Dorado* may not be applied "to cases which have become final prior to the date that the United States Supreme Court rendered the *Escobedo* decision." (*In re Lopez,* 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380]; *In re Shipp,* 62 Cal.2d 547, 549 [43 Cal.Rptr. 3, 399 P.2d 571]; *In re Lessard,* 62 Cal.2d 497, 512 [42 Cal.Rptr. 583, 399 P.2d 39].) In *In re Spencer, ante,* pp. 400, 405 [46 Cal.Rptr. 753, 406 P.2d 33], we further delineated when a case becomes final within the meaning of the rule in cases such as *Lopez. Spencer* states, "In *Linkletter* v. *Walker* (1965) 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601], when

---

[2]Sergeant Lawton, one of the interrogating officers, testified that at the interrogation he had advised Sears that "he was entitled to have an attorney" but thereafter testified to the contrary. The transcript of the examination of Lawton on this matter reads as follows: "At that time [i.e. at the interrogation] did you advise him that he was entitled to have an attorney? A. Yes. Q. Does that appear in your notes? A. I don't believe so. Did I advise him at that time he needed an attorney? Q. No, that isn't what I asked you. I asked you if, at the time of this conversation you told him that he was entitled to have the advice and counsel of an attorney? A. I don't believe so, at that time."

faced with the retroactivity of *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933], the United States Supreme Court made clear that judgments not final at the time of the *Mapp* decision were reviewable by a writ of habeas corpus. . . . The United States Supreme Court, in *Linkletter,* defines 'final judgment'; it states, 'By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp* v. *Ohio.*' (*Linkletter* v. *Walker, supra,* 381 U.S. 618, 622, fn. 5.) . . . Thus the Supreme Court has in substance defined finality as denoting that point at which the courts can no longer provide a remedy to a defendant on direct review.'' *Spencer* and *People* v. *Polk, ante,* pp. 443, 447-449 [47 Cal.Rptr. 1, 406 P.2d 641], applied the *Linkletter* test as to finality in determining whether the judgments were final before *Escobedo.*

Under the *Linkletter* test of finality, the judgments as to appellants' guilt were not final unless ''the time for petition for certiorari had elapsed'' before *Escobedo.* Upon our affirmance of the judgments as to guilt appellants could have sought certiorari. (Cf. *Brady* v. *Maryland,* 373 U.S. 83, 85, fn. 1 [83 S.Ct. 1194, 10 L.Ed.2d 215].) They had 90 days thereafter within which to file such a petition. (See 28 U.S.C. § 2101 (d); rule 22, Rules of the United States Supreme Court.) No authority has been found, however, establishing that appellants could not await affirmance of the judgments as to penalty before filing a petition for certiorari in which they raise federal questions relating to their trial on guilt.

To the contrary, language in several cases gives support to the view that certiorari may still be available here with respect to matters relating to the trial on guilt. *Corey* v. *United States,* 375 U.S. 169, 175 [84 S.Ct. 298, 11 L.Ed.2d 229], which involved a federal statute pursuant to which the defendant was sentenced twice for a crime, held that the defendant had the option of appealing within the prescribed time after either the first or the second sentence. The court stated that ''Long-accepted and conventional principles of federal appellate procedure require recognition of the defendant's right to await the imposition of final sentence before seeking review of the conviction. That is the general rule.'' It was recognized that as a practical matter the severity of the sentence imposed might be a major factor in determining whether to seek review. Similarly in a case such as the

present one whether death or life imprisonment were imposed might be a major factor in the defendant's determination whether to seek certiorari.

In *Reece* v. *Georgia,* 350 U.S. 85, 87 [76 S.Ct. 167, 100 L.Ed. 77], the defendant was convicted of rape and was sentenced to death. On appeal the Georgia Supreme Court decided a constitutional question against the defendant but reversed on another ground. On retrial the defendant was again convicted and sentenced to death, and the Georgia Supreme Court affirmed. The defendant then sought certiorari, raising the constitutional question decided on his first appeal. It was urged that the case was not properly before the United States Supreme Court because the defendant had not applied for certiorari within 90 days after the first judgment of the Georgia Supreme Court, and the United States Supreme Court stated, "This contention is clearly without substance. A timely application for certiorari to review the second judgment was made, and the case is properly here. 28 U.S.C. § 1257. We have jurisdiction to consider all of the substantial federal questions determined in the earlier stages of the litigation. . . ." Although in *Reece* the defendant may have sought certiorari at his first opportunity to do so, it seems unlikely that in a case such as the present one, if the death penalty were affirmed and certiorari then sought, the failure to seek certiorari immediately after affirmance of the judgment of guilt would be viewed by the United States Supreme Court as depriving it of jurisdiction to decide federal questions determined in connection with the guilt trial.

We thus cannot say that the judgments as to appellants' guilt were final before *Escobedo.* ▇ Federal habeas corpus is available to review judgments not final at the time of *Escobedo* that are attacked on the basis of the rule in that case. See *People* v. *Polk, ante,* pp. 443, 448 [47 Cal.Rptr. 1, 406 P.2d 641].) ▇ Reversal of the judgments as to penalty is required on the ground of errors of the type condemned in *People* v. *Morse,* 60 Cal.2d 631, 636 et seq. [36 Cal.Rptr. 201, 388 P.2d 33].[3] It would be an unnecessary

---

[3]The jury was given instructions substantially identical to those condemned in *People* v. *Morse, supra,* 60 Cal.2d 631, 636 et seq. Also during the *voir dire* examination the court made comments to prospective jurors concerning the possibility of parole after seven years.

We do not agree with the Attorney General's argument that, since appellants were responsible for the errors, they may not now complain.

expenditure of time and money were we to reverse solely as to penalty and federal habeas corpus relief were later granted on the ground that at the guilt trial evidence was admitted that was inadmissible under *Escobedo*. ■ More-over, appellants' attack on the judgments of guilt on this appeal from the judgments as to penalty is comparable to a collateral attack, and this court normally affords collateral relief on constitutional grounds if the petitioner had no opportunity to raise the constitutional issue at trial and on appeal (see *People* v. *Polk, supra, ante,* pp. 443, 448-449). There was no such opportunity when, as in this case, the new constitutional right had not been declared at those times.

■ There are a limited number of cases in which the judgment of guilt was affirmed over 90 days before *Escobedo* but not the judgment as to penalty, and the granting of relief in cases such as the present one clearly would not impose the ''impossible burdens upon the administration of criminal justice,'' with which this court was concerned in *In re Lopez, supra,* 62 Cal.2d 368, 371.

■ ■ The error in admitting appellants' confessions was prejudicial per se and requires reversal of the judgments. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356-357; *In re Varnum, ante,* pp. 629, 633 [47 Cal. Rptr. 769, 408 P.2d 97].)

■ For purposes of retrial we note that, unless additional evidence is introduced showing that appellants' confessions are admissible under *Escobedo,* the trial court should exclude any statements in a tape-recorded conversation between them and H. B. Sears that were the fruit of those confessions. (Cf. *People* v. *Polk, supra, ante,* pp. 443, 448-449; *People* v. *Bilderbach,* 62 Cal.2d 757, 763 et seq. [44

The defense requested the erroneous instructions, during the *voir dire* examination advised prospective jurors of the possibility of parole, asked questions such as whether the prospective juror took exception to our system of parole, and called witnesses who testified regarding Adult Authority practices. However, it is not every case in which the doctrine of invited error will preclude a defendant from complaining of the error on appeal (*People* v. *Keelin,* 136 Cal.App.2d 860, 874-875 [289 P.2d 520, 56 A.L.R.2d 355]; see Witkin, Cal. Criminal Procedure (1963) pp. 719-720), and it is manifest that it would be unjust to apply the doctrine here. *People* v. *Morse, supra,* 60 Cal.2d 631, was not decided until after the verdicts were rendered at the second penalty trial in the instant case, and on appellants' prior appeal we said that it was proper for the prosecution to raise the possibility of appellants' parole and for the court to instruct the jury of the minimum time a person sentenced to life imprisonment must serve before he may be eligible for parole. (*People* v. *Ketchel, supra,* 59 Cal.2d 503, 543-545.)

Cal.Rptr. 313, 401 P.2d 921].) The conversation occurred on June 18, 1961, after they had already made their confessions. Law enforcement officers talked with the three defendants for several minutes and then left them alone in a room together. Before leaving the room, the officers stated, ''We'll go out of the room and let you talk. You can discuss it and do what you . . . please about it. . . .'' Immediately after the officers left, H. B. Sears said, ''They got a tape on. Be quiet. We'll wait for the lawyer.'' Later in the conversation H. B. Sears again made a similar comment, and Thomas Sears said, ''They can't do anything without your signing anything, can they?'' During the conversation appellants made incriminating statements, which by themselves were not sufficiently explicit to constitute a confession to the murder and the robbery, and also made comments reflecting their antagonistic attitude toward law enforcement officers.[4] A portion of the tape-recorded conversation was admitted into evidence at the guilt trial, and additional portions of the conversation were also introduced at the second penalty trial.

In contending that the tape-recorded conversation was admissible, the Attorney General relies upon cases such as *People* v. *Boulad,* 235 Cal.App.2d 118, 125 et seq. [45 Cal. Rptr. 104], which held that it was not error to admit evidence of a conversation between the defendants, which had been recorded by the use of a microphone concealed near the defendants' cells, since the conversation was not the result of a process of interrogations that lent itself to eliciting incriminating statements. Here, unlike *Boulad,* it appears that appellants had made confessions inadmissible under *Escobedo* shortly before the tape-recorded conversation, and the content of part of the conversation and the surrounding circum-

---

[4]In the conversation Ketchel said, ''I copped out to my part. I copped out to nothing else. They got me cold.'' Thomas Sears stated, ''. . . I copped to my part. You copped to your part. But, then I changed the story, that you weren't even there.'' H. B. Sears said, ''. . . I been holding out on account of you guys. I don't know what this is all about.'' Ketchel said, ''I'm dead. . . . Somebody's going to get gassed.'' H. B. Sears said, ''All right. You guys go on. Sign your statement. Get gas. But I've been holding out because I don't know what's going on. They said you killed a man. Well, I didn't kill nobody.'' Thomas Sears then said, ''I know you didn't. I told them the truth. I did it, man.'' Later in the conversation Ketchel said, ''I don't even want my people to get me a lawyer.'' H. B. Sears said, ''You going to take it all by yourself?,'' and Ketchel replied, ''Why not?'' Ketchel thereafter stated, ''I told them that, ah, I'd done it. I don't know who else did it.''

stances indicate that at least some of the statements were the fruit of the prior confessions.

Since we must reverse the judgments as a result of the error in admitting appellants' confessions, we need not discuss their further contentions that the procedure used in determining the voluntariness of their confessions was improper under *Jackson* v. *Denno,* 378 U.S. 368 [84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.2d 1205], that Ketchel's confession was involuntary, that errors of the type condemned in *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], occurred at the guilt trial, that a new trial as to guilt should be ordered because of newly discovered evidence, and that the imposition of the death penalty constitutes cruel and unusual punishment.

The remittitur issued in *People* v. *Ketchel,* Crim. 7070, 59 Cal.2d 503 [30 Cal.Rptr. 538, 381 P.2d 394], is recalled insofar as it relates to Ketchel and Thomas Sears, and our judgment of May 7, 1963, is vacated as to them. The judgments appealed from are reversed in their entirety as to Ketchel and Thomas Sears.

Mosk, J., did not participate.

BURKE, J.—I dissent.

A number of eyewitnesses identified appellants as the robbers who at gunpoint obtained money from the cashiers at the Star Market, and abundant competent evidence established that they were guilty of the murder of Thomas Elder, a 28-year-old policeman who attempted to apprehend them while they were fleeing from the market. I am not of the opinion that it is reasonably probable that a result more favorable to them would have been reached had their confessions not been admitted. Such admission did not constitute reversible error under the provisions of section 4½, article VI, of the California Constitution, or under the tests enunciated in either *People* v. *Watson,* 46 Cal.2d 818, 835 [299 P.2d 243], or *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 [84 S.Ct. 229, 11 L.Ed.2d 171]. Nor do I believe that the other matters raised relating to the trial on guilt warrant setting aside the judgments as to guilt.

I am also of the opinion that the errors complained of with respect to the second penalty trial did not result in a miscarriage of justice. (Cal. Const., art. VI, § 4½; *People* v.

*Watson, supra,* 46 Cal.2d 818, 835; *Fahy* v. *Connecticut, supra,* 375 U.S. 85, 86-87.) In addition to other competent evidence establishing their guilt of the robbery and the murder, appellants admitted their guilt while testifying in their own behalf at the second penalty trial. It further appears that Ketchel had committed four prior robberies and that Thomas Sears had also previously committed a robbery. Thus, we may infer that each was well aware of his right to remain silent. The evidence indicates further that they had discussed and were aware of their right to counsel.

I would not vacate our judgment of May 7, 1963, as to appellants and would affirm the judgments as to penalty.

McComb, J., and White, J.,* concurred.

Respondent's petition for a rehearing was denied February 23, 1966. Mosk, J., did not participate therein. McComb, J., Burke, J., and White, J.,* were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.