[Crim. No. 15053. In Bank. Mar. 12, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
BOOKER T. HILLERY, JR., Defendant and Appellant.

COUNSEL

Booker T. Hillery, in pro. per., and Lois A. Prentice, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Jack R. Winkler and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TOBRINER, J.**—On November 16, 1962, defendant was convicted of first degree murder and sentenced to death. On appeal, we affirmed the conviction of guilt, but reversed the penalty. (*People* v. *Hillery* (1965) 62

Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382].) The jury again fixed the penalty at death, and we affirmed. (*People* v. *Hillery* (1967) 65 Cal.2d 795 [56 Cal.Rptr. 280, 423 P.2d 208].) After the decision of the United States Supreme Court in *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], we granted defendant's petition for habeas corpus, recalled the remittitur, and reversed the judgment imposing the death penalty. (*In re Hillery* (1969) 71 Cal.2d 857 [79 Cal.Rptr. 733, 457 P.2d 565].) Following a new penalty trial, the jury again fixed punishment at death, and the case returned to this court on defendant's automatic appeal.

Defendant's briefs were filed before our decision in *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], holding the death penalty unconstitutional. Many of the issues raised in those briefs are now moot. ■ We discuss only those contentions of defendant which relate to the judgment on the issue of guilt, and focus upon defendant's primary contention, that he was denied a fair trial by reason of pretrial newspaper publicity.

Defendant was tried in Kings County, an agricultural county that had a population, as reported in the 1960 census, of 49,954. The murder of Marlene Miller and the arrest and trial of defendant received extensive newspaper coverage. Since the newspaper articles themselves, however, are not part of the record before us, we cannot determine whether that coverage spoke in an inflammatory tone, or whether it revealed any inadmissible evidence to defendant's prejudice.[1] Virtually all members of the jury panel had read of defendant's case, and a few were excused for bias against defendant. Each of the jurors who were actually chosen affirmed that he had no opinion respecting the guilt or innocence of defendant and was entirely open-minded on that subject.[2]

Defendant did not move to change venue from Kings County. ■ "A defendant may not claim for the first time on appeal that he was deprived

---

[1]Defendant asserts that one newspaper revealed that defendant had taken, and failed, a lie detector test, but defendant has not set forth any reference to the record to support that assertion. The *voir dire* of the jury does not show whether any of the jurors who were actually selected, or whether any members of the jury panels, were aware of defendant's failure to pass the lie detector test.

[2]The trial court "suggested" that prospective jurors not read newspaper accounts of the trial, but members of the last jury panel called were not present when he made this suggestion. The court never "admonished" the jury as finally selected to refrain from reading such accounts. These omissions, however, do not compose a likely source of prejudicial error, especially since defendant made no showing that newspaper reporting during the trial was inflammatory in character, or contained false or inadmissible information.

of a fair trial before an unbiased jury because of newspaper publicity where with full knowledge of the publicity he made no objection and failed to move for a change of venue." (*People* v. *Walker* (1967) 247 Cal. App.2d 554, 563 [55 Cal.Rptr. 726]; see *People* v. *Cook* (1952) 39 Cal.2d 496, 499 [247 P.2d 567]; *People* v. *Laster* (1971) 18 Cal.App.3d 381, 387 [96 Cal.Rptr. 108]; *People* v. *Richardson* (1968) 258 Cal.App.2d 23, 29 [65 Cal.Rptr. 487]; *People* v. *Magee* (1963) 217 Cal.App.2d 443, 473 [31 Cal.Rptr. 658].)  ▮  In the present case, defendant not only failed to move to change venue at time of trial, but raised no issue concerning jury bias on his first appeal in 1965, the second appeal in 1967, or argument upon recall of the remittitur in 1969. We conclude that this contention has long since been waived.

Moreover, having failed to raise the issue of change of venue at trial or on appeal, defendant can raise that issue now only if he can show that he had no opportunity to do so earlier. (See *People* v. *Ketchel* (1966) 63 Cal.2d 859, 866 [48 Cal.Rptr. 614, 409 P.2d 694].) Defendant's counsel suggests that prior to the decision of the United States Supreme Court in *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d 600, 86 S.Ct. 1507], he could not possibly prevail upon a motion to change venue grounded on pretrial newspaper publicity and thus, as a practical matter, defendant had no opportunity to raise that issue at his 1962 trial and subsequent appeal. The decision of the Supreme Court in *Sheppard* broke new ground in its discussion of the effect of newspaper publicity, its admonition that trial judges should take prophylactic measures to prevent publicity from influencing jurors, and its holding that appellate courts should evaluate independently the circumstances of each case. But before *Sheppard,* and even before defendant's trial in 1962, the cases made clear that a defendant who could not obtain a fair trial because of prejudicial newspaper publicity had a constitutional right to a change of venue. (See *Irvin* v. *Dowd* (1961) 366 U.S. 717, 728 [6 L.Ed.2d 751, 759, 81 S.Ct. 1639]; *People* v. *McKay* (1951) 37 Cal.2d 792, 796 [236 P.2d 145].)[3] We have

---

[3]In 1962, when defendant was tried, the court was required to change venue only if the defendant demonstrated, by a preponderance of the circumstances, that he would not receive a fair and impartial trial in the present venue. (See *People* v. *Tidwell* (1970) 3 Cal.3d 62, 69 [89 Cal.Rptr. 44, 473 P.2d 748].) In *Maine* v. *Superior Court* (1968) 68 Cal.2d 375, 383 [66 Cal.Rptr. 724, 438 P.2d 372], we ruled that a motion for change of venue should be granted whenever, because of the dissemination of potentially prejudicial material, there is a "reasonable likelihood" that a fair trial cannot be had. The standard established in *Maine,* however, does not apply to cases tried before the *Maine* decision became final. (*Maine* v. *Superior Court, supra,* 68 Cal.2d at p. 384, fn. 9; *People* v. *O'Brien* (1969) 71 Cal.2d 394, 400 [79 Cal.Rptr. 313, 456 P.2d 969].) At defendant's third penalty retrial in 1970, the trial court applied the *Maine* standard and transferred venue to Kern County.

no reason to believe that defense counsel were unaware of these decisions or that their failure to move to change venue stems from incompetence of counsel; it is more likely that counsel did not so move because they were satisfied that the jury actually selected would give defendant a fair trial.[4]

In *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], we held the death penalty unconstitutional under article I, section 6, of the California Constitution. The enactment of article I, section 27, by initiative, and of subsequent legislation imposing the death penalty for certain offenses (Stats. 1973, ch. 719) cannot constitutionally affect this defendant. (*People* v. *Murphy* (1972) 8 Cal.3d 349, 352, fn. 2 [105 Cal.Rptr. 138, 503 P.2d 594]; see *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726].)

The judgment insofar as it provides for the penalty of death, is modified to provide a punishment of life imprisonment, and as so modified is affirmed.

Wright, C. J., Burke, J., Sullivan, J., Clark, J., and Draper, J.,* concurred.

**McCOMB, J.**—For the reasons expressed in my dissenting opinion in *People* v. *Anderson,* 6 Cal.3d 628, 657 [100 Cal.Rptr. 152, 493 P.2d 880], I dissent from the modification of the judgment to provide a punishment of life imprisonment instead of death. (See Cal. Const., art. I, § 27.)

---

[4]The reply brief by appointed counsel argues that trial counsel in 1962 should have raised a defense of diminished capacity. The record of defendant's conduct, both before and after the 1962 trial, attests to his emotional instability and sexual maladjustment. But it contains no evidence to indicate that defendant's emotional and sexual troubles were of such a nature or seriousness that he could not premeditate or entertain malice aforethought. Appointed counsel also suggests that trial counsel should have based a defense on the alleged fact of Hillery's impotence. Defendant's sexual potency, however, is of only tangential relevance to this case; his victim was not raped, and impotence would not prevent defendant from committing murder in an attempt to perpetrate rape. (See *People* v. *Hillery, supra,* 62 Cal.2d at pp. 704-705.)

Defendant himself, in a supplemental brief, contends that boots offered in evidence at the guilt trial were unlawfully seized. This contention was raised and rejected on defendant's first appeal (*People* v. *Hillery, supra,* 62 Cal.2d at p. 710) and again following the penalty retrial (*People* v. *Hillery, supra,* 65 Cal.2d at pp. 803-804.)

*Assigned by the Chairman of the Judicial Council.