**Booker T. HILLERY, Jr., Petitioner,**

v.

**George SUMNER, Warden, California State Prison, San Quentin, California, Respondent.**

**No. CIVIL S–78–594 LKK.**

United States District Court,
E. D. California.

Aug. 7, 1980.

---

E. Richard Walker, Federal Defender, Arthur W. Ruthenbeck, Chief Asst. Federal Defender, Sacramento, Cal., for petitioner.

George Deukmejian, Atty. Gen., Wm. George Prahl, Deputy Atty. Gen., Sacramento, Cal., for respondent.

## MEMORANDUM AND ORDER

KARLTON, District Judge.

Respondent filed three motions: to dismiss, for reconsideration of my order of March 27, 1980, and for a stay of responses to interrogatories. A brief examination of

the procedural history of the case aids in placing the current motions in perspective.

Petitioner, a state prison inmate, filed his application for a writ of habeas corpus in 1978, challenging the constitutionality of his 1962 Kings County, California, Superior Court conviction for murder. He alleges that he is Black and that he was denied equal protection of the laws because Blacks were systematically excluded from the grand jury which indicted him. On January 31, 1979, the Honorable Thomas J. Mac-Bride determined that petitioner had established a prima facie case of discriminatory selection and directed the respondent to show cause why a writ of habeas corpus should not issue on that ground.

In his return to the Order to Show Cause, respondent argued that because the state had provided petitioner with an opportunity to fully and fairly litigate his claim of racial discrimination in a state court, federal habeas review was not available. Alternately he argued that if such review was appropriate, the record reflected that there was no racial discrimination in the selection of the grand jury. Petitioner's traverse took issue with respondent's arguments.

On March 27, 1980, I filed an order which altered the posture of the case. In relevant part that order directed the parties to expand the record of the case by filing certain documentary material which I requested, propounded interrogatories to the parties, and vacated that part of the Order to Show Cause which had found that petitioner had established a prima facie case. In all other respects, however, the Order to Show Cause of January 31, 1979, remained in effect.

I

MOTION TO DISMISS

Respondent's present motion to dismiss, citing Rule 9,[1] is based on the delay between the California Supreme Court's affirmance of the guilt phase of petitioner's conviction (see *People v. Hillery* (1965) 62

Cal.2d 692, 44 Cal.Rptr. 30, 401 P.2d 382), and the filing of the application for habeas relief in 1978.

The Rule provides:

A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its ability to respond to the motion by delay in filing unless the movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.

By its terms, Rule 9 does not provide a procedure for raising the issue of prejudicial delay. In his Points and Authorities in support of the motion, respondent likewise failed to suggest any procedural basis for his motion. Since the scope of material to be reviewed by the court in resolving the motion may turn on the procedural nature of the motion, this failure is significant.

Petitioner, on the other hand, using a procedural analysis, has argued that respondent has waived the Rule 9 defense. Looking to Rule 11 which allows a district court to proceed in any lawful manner and to apply the Federal Rules of Civil or Criminal Procedure, petitioner responded to the motion by contending that a Rule 9 motion is analogous to an affirmative defense which may be raised in a motion to dismiss under F.R.Civ.P. 12(b). Petitioner then argued that under F.R.Civ.P. 12, respondent's failure to raise the defense in the return to the Order to Show Cause or in a motion filed before the return constituted a waiver of the defense.

Not surprisingly, at the hearing respondent disputed petitioner's waiver analysis. Upon my inquiry at oral argument, respondent characterized his motion as sui generis to habeas corpus proceedings and thus not analogous to Rule 12(b) at all. Moreover, he maintained no waiver had occurred since the necessity for filing the Rule 9 motion

---

1. Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. Foll. § 2254 (hereafter "Rules").

did not become apparent until I issued my order of March 27, 1980, requiring expansion of the record. When the original return was filed, respondent reasons, the only evidence before the court on the jury discrimination claim was the record of the state court proceedings. He contends, however, that the court order augmenting the record resulted in prejudice to the state because a crucial witness is dead and thus cannot be the source of information to counter expected evidence produced pursuant to the order expanding the record. Under these circumstances, according to respondent, there is no waiver, since at the time of filing the return there was no prejudice and thus no Rule 9 objection to be raised. For the reasons set forth below, I now determine that respondent's motion to dismiss must be denied since it was brought in neither a timely nor an appropriate fashion.

■ Essentially, respondent's argument is one of "surprise," i. e., he could not reasonably anticipate that he would be required to meet evidence outside the state court record. Such an argument cannot prevail, for there could be no surprise. The power of inquiry on federal habeas corpus is plenary. *Townsend v. Sain* (1963) 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770. Although the state court records are generally 'all that is before the court at the time the return is filed (see Rule 6(b)), the court's consideration of the alleged constitutional violation is not confined to the state court record; the court's power to take evidence relevant to an allegedly unconstitutional detention has been repeatedly upheld. *Id.* at 311, 83 S.Ct. at 756; *U. S. ex rel. Barksdale v. Blackburn* (5th Cir. 1980) 610 F.2d 253, 259. If, as petitioner alleges, he did not receive a full and fair evidentiary hearing in the state court, a hearing in this court is mandated (*Id.* at 312; 28 U.S.C. § 2254(d)); moreover, in other cases it is within the court's discretion to take evidence bearing upon the applicant's claim. *Townsend v. Sain, supra,* 372 U.S. at 318, 83 S.Ct. at 759. Thus, the possibility of prejudice (as the respondent defines it) is inherent in the very nature of habeas corpus

review. That is to say, the state could not reasonably believe that in assessing the effect of delay upon its ability to defend there was no possibility of going beyond the state court record. Accordingly, I cannot agree with respondent's contention that pleading a Rule 9 defense in the return was unnecessary.

■ Given the fact that respondent's rationalization of his failure to raise a Rule 9 defense in his return is of no avail, I must now assess the effect of that failure. Rule 9 is based on the equitable doctrine of laches (see *Paprskar v. Estelle* (5th Cir. 1980) 612 F.2d 1003, 1007; *Baxter v. Estelle* (5th Cir. 1980) 614 F.2d 1030, 1033–1034; D. Dobbs, *Remedies,* pp. 43–44 (1973)). As I have noted, the rules provide that when no procedure is specified, recourse may be had to the Federal Rules of Civil or Criminal Procedure. See Rule 11. Inasmuch as the criminal rules do not require a written pleading by a defendant, it would appear appropriate to look to the civil rules to determine what must be contained in a return to an Order to Show Cause in habeas.

■ F.R.Civ.P. 8(c) classifies laches as an affirmative defense, to be set forth "in a pleading to a preceding pleading. . . ." Several courts have held that a failure to plead laches in the answer constitutes a waiver of the defense. *Topping v. Fry* (7th Cir. 1945) 147 F.2d 715, 718; *United States v. A–1 Meat Company,* 146 F.Supp. 590, 591, aff'd, 255 F.2d 491 (2nd Cir. 1958); *Overseas Motors, Inc. v. Import Motors Limited, Inc.* (E.D.Mich.1974) 375 F.Supp. 499, 512, aff'd (6th Cir. 1975) 519 F.2d 119, *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). Accordingly, respondent should have pled laches or Rule 9 in his return to the Order to Show Cause. In addition, although the habeas cases focusing on laches and on Rule 9 do not discuss the matter, many implicitly support the idea that laches is properly a matter of defense, for they discuss the question in the course of rendering a decision following an evidentiary hearing, at which evidence on laches

presumably was offered. See, e. g., *Baxter v. Estelle* (5th Cir. 1980) 614 F.2d 1030; *United States ex rel. Barksdale v. Blackburn* (5th Cir. 1980) 610 F.2d 253; *Hudson v. State of Alabama* (5th Cir. 1974) 493 F.2d 171; *Dean v. State of North Carolina* (M.D. N.C.1967) 269 F.Supp. 986. Thus, it would appear proper to treat the Rule 9 problem as a matter of affirmative defense, which should have been pled in the return. The failure to so plead precludes the motion now.[2] See F.R.Civ.P. 8, 5 Wright & Miller, *Federal Practice and Procedure* § 1278.

Moreover, assuming that respondent has not waived a Rule 9 defense, his motion must nonetheless be denied since however it is characterized, it is insufficient.

One way of viewing the motion is, as petitioner suggests, as a motion to dismiss under F.R.Civ.P. 12(b). See *State of Ohio v. Peterson, Lowry, Rall, Etc.*, (10th Cir. 1978) 585 F.2d 454; *Miller v. Shell Oil Co.* (10th Cir. 1965) 345 F.2d 891, 893; *Overseas Motors, Inc. v. Import Motors Limited, Inc.*, *supra*; *Russel v. Thomas* (S.D.Cal.1955) 129 F.Supp. 605; Wright and Miller, *Federal Practice and Procedure*, Civil § 1277.

■ If the motion is treated as a 12(b) motion, however, it must be denied, since such a motion can only be brought *before* an answer is filed unless it raises specially enumerated defenses not applicable here. See F.R.Civ.P. 12(h) and 12(b); Wright and Miller, *Federal Practice and Procedure*, Civil § 1361.

■ Alternatively, the motion can be deemed to be a Motion for Judgment on the Pleadings. See *Warner Co. v. Brann & Stuart Co.* (E.D.Pa.1961) 198 F.Supp. 634; F.R.Civ.P. 12(c); Wright and Miller, *Federal Practice and Procedure*, Civil § 1361. Such a characterization also avails the petitioner nothing, for here again the motion must be denied. As the name implies, the matters to be considered on such a motion are the pleadings only—in this case, the application, the return and the traverse. When so considered, vital factual issues such as prejudice cannot be resolved.

As I discuss below in relation to respondent's characterization of his motion, laches raises factual issues which ordinarily, and in this case, cannot be resolved on the pleadings. Because the result of characterizing respondent's motion as one for summary judgment is indistinguishable from characterizing a Rule 9 motion as sui generis, I now turn to that characterization.

■ If we accept Rule 9 as sui generis to habeas corpus proceedings and thus assume that it may be raised by motion in the first instance, the next question is the scope of such a motion. Because laches for habeas corpus purposes is ultimately a complex factual issue, it appears clear that it must be a speaking motion. That is, as shown infra, the moving party must show not merely the passage of time (perhaps discernable from the pleadings) but prejudice in fact, and that the delay was attributable to the opposing party. This the respondent has not done.[3]

Under Rule 9 a respondent must make a particularized showing of prejudice, for delay alone will not justify the denial of habeas corpus relief. *Paprskar v. Estelle, supra* at 1008; *United States ex rel. Barksdale v. Blackburn, supra* at 260. See also Advisory Committee Notes, § 2254 Cases, which provide that a court must engage in a case-by-case analysis of the nature and extent of prejudice to the respondent caused by petitioner's delay. Thus, a Rule 9 motion raises issues that ordinarily could not be resolved on the pleadings but rather must be supported by a factual showing. Respondent

---

**2.** I reserve for a proper motion the question of whether respondent should be permitted to amend his return.

**3.** Such a speaking motion would be akin to a motion for summary judgment (F.R.Civ.P. 56) and indeed affirmative defenses may be established by such a motion (See Wright & Miller, *Federal Practice and Procedure* § 1277); however, under such a treatment the respondent must demonstrate that there is no material issue of fact in dispute (See e. g. *Commodity Future Tradings Comm. v. Savage* (9th Cir. 1979) 611 F.2d 270, 282), and as the analysis infra demonstrates, there are, to say the least, such issues.

presented his motion solely on the pleadings; it was not supported by any evidentiary matter upon which the court could determine the nature and extent of the prejudice which respondent contends flowed from petitioner's delay.

The only factual matters as to prejudice were presented at oral argument. There the parties stipulated that Judge Wingrove, the state court judge who selected the grand jury which indicted petitioner, died in 1966. As noted above, respondent argues that the state's ability to respond has been prejudiced by the death of this witness. As I have explained, however, this alone is not sufficient to support dismissal.

Under Rule 9, dismissal is proper only when the prejudice suffered is attributable to petitioner's delay in filing. *Davis v. Adult Parole Authority* (6th Cir. 1979) 610 F.2d 410, 414. Assuming, arguendo, that the loss of Judge Wingrove's testimony would be sufficient prejudice to the state to support dismissal, a question which I do not decide, dismissal would nonetheless be appropriate only if the judge's testimony could have been secured had petitioner filed his federal writ earlier. *Id.* ; Rule 9. As will be shown below, the history of petitioner's state proceeding makes it extremely unlikely that he could have properly filed his federal action before Judge Wingrove's death.

■ Although the California Supreme Court affirmed the guilt phase of petitioner's conviction in 1965, it reversed the death penalty imposed and remanded to the trial court for further proceedings. *People v. Hillery, supra* at 713, 44 Cal.Rptr. 30, 401 P.2d 382. The appeal from the second penalty trial was not completed until 1967. *People v. Hillery* (1967) 65 Cal.2d 795, 56 Cal.Rptr. 280, 423 P.2d 208, *cert. denied*, 389 U.S. 986, 88 S.Ct. 486, 19 L.Ed.2d 496 (1968). In 1969, by writ, petitioner was successful in securing the reversal of the second penalty trial because of *Witherspoon* error. *In re Hillery* (1969) 71 Cal.2d 857, 79 Cal.Rptr. 733, 457 P.2d 565. At his third penalty trial, petitioner once again received the death penalty. In 1974, on automatic appeal to the California Supreme Court, the Court modified the penalty to life imprisonment. *People v. Hillery* (1974) 10 Cal.3d 897, 112 Cal.Rptr. 524, 519 P.2d 572. This protracted litigation in effect precluded federal court intervention. Had petitioner sought federal habeas relief while the state court litigation was continuing, considerations of comity and federalism would almost certainly have required dismissal. Both doctrines compel a respect for state functions and counsel against interference with ongoing state judicial proceedings. *Juidice v. Vail* (1977) 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376; *Huffman v. Pursue, Ltd.* (1974) 420 U.S. 592, 601, 95 S.Ct. 1200, 1206, 43 L.Ed.2d 482; *Younger v. Harris* (1971) 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669. Moreover, the California Supreme Court's determination on the guilt phase is unlikely to have induced a district court to hear petitioner's habeas since in this circuit, finality of one issue in the state courts is not generally sufficient to circumvent the requirements of comity and federalism. *Drury v. Cox* (9th Cir. 1972) 457 F.2d 764, 765. Thus, it appears that at the earliest petitioner could not have filed in federal court until 1967 following the California Supreme Court's affirmance of the death penalty imposed at the second penalty trial, and perhaps not even until 1974 when the state litigation was finally resolved. Measured by either date, no prejudice from delay suffered by the state is attributable to petitioner. Put simply, by 1967 (the earliest date that it may reasonably be argued petitioner could have filed), Judge Wingrove had died. Accordingly, both because it appears respondent has waived his laches defense and because he cannot show prejudice attributable to petitioner's delay, respondent's motion to dismiss must be denied.

## II

### MOTION TO RECONSIDER MARCH 27, 1980 ORDER

■ Respondent's objection to my order to augment the record and answer interrogatories is predicated upon his reading of *Rose v. Mitchell* (1979) 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739. He argues *Rose* pre-

cludes both enlargement of the record as well as an evidentiary hearing. Respondent contends that federal habeas corpus review of state grand jury discrimination claims is limited to the state record.

Although the facts of *Rose* are somewhat complex, for our purposes they may be briefly summarized. During the state proceeding, the prisoners presented evidence that suggested that there had never been a Black jury foreperson in the county. On the basis of *this evidence*, the district court found that a prima facie case of discriminatory selection had been shown and ordered the state to provide rebuttal evidence. *Id.* at 99 S.Ct. 2997 and 3006. In rebuttal the state filed an affidavit executed by the state judge who presided over the selection of the grand jury. Although the affiant admitted that there had been no Black grand jury foreperson "[i]n my five counties," he disclaimed any discrimination. *Id.* 99 S.Ct. at 3006. On the basis of this "material in rebuttal . . . the District Court declined to issue the writs of habeas corpus." *Id.*

On appeal the Sixth Circuit reversed, finding that the prisoners had established a prima facie case which the state had failed to rebut. The Court of Appeals apparently reached the conclusion that a prima facie case had been presented by relying on the state trial judge's averment that no Blacks had served as forepersons. As noted, however, that evidence was filed in *rebuttal*, subsequent to the district court's determination that a prima facie case had been established. *Id.* 99 S.Ct. at 3007.

The Supreme Court reversed the Sixth Circuit because, in part, it "overemphasized and exaggerated the evidence in support of its conclusion that there had 'never been a Black foreman or forewoman. . . .'" *Id.* 99 S.Ct. at 3007.[4] However, the Supreme Court noted that the Sixth Circuit based its conclusion concerning the prima facie case in part upon the trial judge's affidavit. This affidavit, the Court explained, "formed no part of the case put on by respondents." *Id.* The evidence in support of the prima facie case, which aside from the trial judge's affidavit, consisted entirely of evidence in the state court record, was found by the Supreme Court to be insufficient as a matter of law to establish a prima facie case.[5]

Respondent rests his claim on the single sentence in *Rose* that the trial judge's affidavit "formed no part of the case put on by respondents." The Supreme Court's refusal to consider the affidavit in support of the prima facie case, respondent argues, must mean that the district court is limited to the record before it. This cryptic comment of the Supreme Court seems a slender reed to base such a startling departure from Rule 7(a), 28 U.S.C. § 2254(d), and *Townsend v. Sain, supra*. No court since the *Rose* decision has so interpreted the case. See, e. g. *United States ex rel. Barksdale v. Blackburn, supra*.

*Rose* is subject to a much more straightforward reading. Since the district court judge found that a prima facie case existed prior to accepting the trial judge's affidavit, which he accepted solely as rebuttal, the affidavit clearly was not part of the record supporting a prima facie case. By considering the affidavit as part of the prima facie case, the Sixth Circuit distorted the procedural posture of the case and effectively denied the state an opportunity to rebut *its* finding of a prima facie case.

This reading of *Rose*, as opposed to respondent's reading, is supported by the fact that the Court did not comment on the fact that the district judge ordered the state to supplement the record, much less find that such augmentation was improper. It is simply unthinkable that the Supreme Court

---

4. This appears to be no more than the hardly startling proposition that a Court of Appeal may not ordinarily substitute its judgment of the facts for the district court's judgment. See, e. g. *Canron, Inc. v. Plasser American Corp.* (4th Cir. 1979) 609 F.2d 1075.

5. It was similar reasoning, i. e. that the mere absence of Blacks without evaluation of the statistical significance of such an absence is insufficient to establish a prima facie case, that led me to vacate the portion of Judge MacBride's opinion that petitioner in this case had established a prima facie case and, accordingly, led to my order to augment the record.

eviscerated Rule 7 without even mentioning it.

I do not believe a single cryptic sentence in a case that does not address the propriety of supplementing the record or holding an evidentiary hearing invalidates my earlier order based as it is on the habeas corpus rules and firmly established precedent. Accordingly, respondent will be directed to provide full responses to my interrogatories.[6]

IT IS THEREFORE ORDERED THAT:

1. Respondent's motion to dismiss, for reconsideration and for stay is denied;

2. Respondent shall file and serve full responses to the court propounded interrogatories not later than twenty (20) days from the date of this order.

---

**6.** Respondent also contends that expansion of the record is improper because expansion is tantamount to a hearing and because petitioner is not entitled to a hearing under *Townsend v. Sain, supra.*

The Advisory Committee Notes to Rule 7 make it clear that expansion was intended to be a procedure separate and apart from an evidentiary hearing, for "[t]he purpose is to enable the judge to dispose of some habeas petitions . . . without the time and expense required for an evidentiary hearing."

In addition, the Advisory Committee notes to Rule 8, which covers evidentiary hearings, state that a determination of whether to hold a hearing should be made after "a review of the answer, the transcript and record of state proceedings, and, if there is one, the expanded record."

Since the order for expansion is *not* the functional equivalent of a hearing, the court need not decide at this time whether an evidentiary hearing is proper under *Townsend v. Sain, supra.* The court notes, however, that even if a hearing is not mandated by the *Townsend* criteria, the decision whether to hold a hearing is within the discretion of the district court. *Id.* 372 U.S. at 318, 83 S.Ct. at 759; see also *Stone v. Cardwell* (9th Cir. 1980) 620 F.2d 212.