**Booker T. HILLERY, Jr., Petitioner,**

v.

**Reginald PULLEY, Acting Warden, California State Prison, San Quentin, California, Respondent.**

**No. Civil S–78–594 LKK.**

United States District Court,
E. D. California.

March 9, 1982.

---

Clifford Tedmon, Sacramento, Cal., for petitioner.

George Deukmejian, Atty. Gen., Wm. George Prahl, Deputy Atty. Gen., Sacramento, Cal., for respondent.

## OPINION AND ORDER

KARLTON, District Judge.

For the second time[1] I turn to the extremely difficult procedural problems tendered by this petition for habeas corpus.[2]

Despite the long history of federal review of state convictions under habeas corpus,[3] a

---

1. *See Hillery v. Sumner,* 496 F.Supp. 632 (E.D. Cal.1980).

2. I am publishing this Opinion despite my firm belief that all federal courts should exercise discipline in considering publication, *see Kouba v. Allstate Insurance Co.,* 523 F.Supp. 148, 151, n.2 (E.D.Cal.1981). I am doing so since the motion considered here raises complex issues, some of which have apparently never been discussed in any published opinion.

3. Habeas corpus was received into our law in the colonial period. It was explicitly recognized by incorporation into Art. I, § 9, cl.2 of the Federal Constitution and was included in the first grant of federal court jurisdiction by the Judiciary Act of September 24, 1789, 1 Stat. 81, 82. The obligation of the federal courts to review state court convictions for federal constitutional error has existed since 1867. Act of February 5, 1867, 14 Stat. 385, 386. (*See generally, Fay v. Noia,* 372 U.S. 391, 400, 83 S.Ct. 822, 828, 9 L.Ed.2d 837 (1963)).

remarkable number of important procedural questions have received little or no attention. This Opinion addresses some of these crucial questions of procedure as well as important substantive issues. In essence, I first decide here that under certain circumstances a respondent may, with leave of court, move to dismiss a petition for habeas corpus. The Opinion then considers what standards are applied to resolution of the motion. Next, I consider the proper relationship between the exhaustion doctrine, see 28 U.S.C. § 2254(b) & (c), and the power of the federal court to develop its own factual record, either under Rule 7 of the Rules Governing Section 2254 Cases in the District Courts[4] or pursuant to 28 U.S.C. §§ 2246, 2247. I determine that where the record has been expanded pursuant to Rule 7 and as a result of expansion the record now reveals that the petitioner has not exhausted his state remedies, the petition should be dismissed without prejudice to allow the state court to review the unexhausted claim. On the other hand, I determine that if the failure to exhaust is not discovered until the evidentiary hearing stage, the court should resolve the claim on its merits. Finally, I consider and reject respondent's contention that the facts elicited through the expansion of the record in this case fundamentally transforms the substance of petitioner's claim resulting in the conclusion that the matter has not been fairly presented to the state court. To place these issues in their proper context, I must turn to a brief description of the procedural history of Hillery's various attempts to have the issue presented by this petition resolved.

In 1962 petitioner (a Black man) was indicted for murder in Kings County, California. At a pretrial hearing he sought dismissal of the indictment premised on an alleged systematic exclusion of members of his race from the Grand Jury. The motion was heard by the superior court judge who selected the Grand Jury and was denied. Thereafter a trial was held and petitioner was convicted and sentenced to death.

Subsequent to that conviction the California Supreme Court, on four separate occasions, has considered the propriety of either the conviction itself or the imposition of the death penalty. In *People v. Hillery*, 34 Cal.Rptr. 853, 386 P.2d 477 (1963), the Court unanimously affirmed the conviction of murder in the first degree and the judgment of death. That decision resolved, adverse to the petitioner, the issue presented by the instant petition—namely, the alleged systematic exclusion of Blacks from the Grand Jury which indicted him. Thereafter, the Court vacated its decision and granted a rehearing to consider the conviction in light of certain of its own recent decisions dealing with questions unrelated to the issue presented by this petition. Once again the Court rejected the petitioner's assertion that Blacks had been systematically excluded from the Grand Jury which indicted him in affirming the conviction. The imposition of the death penalty, however, was reversed, requiring a new penalty trial. *People v. Hillery*, 62 Cal.2d 692, 44 Cal.Rptr. 30, 401 P.2d 382 (1965). Petitioner's subsequent contacts with the California Supreme Court were limited to the repeated instances in which a jury imposed the death penalty and the Court reversed; *In re Hillery*, 71 Cal.2d 857, 79 Cal.Rptr. 733, 457 P.2d 565 (1969) (death penalty vacated under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)); *People v. Hillery*, 10 Cal.3d 897, 112 Cal.Rptr. 524, 519 P.2d 1222 (1974) (death penalty vacated by virtue of the Court having found the statute under which the death penalty was imposed unconstitutional).

On May 22, 1978, Hillery filed a pro se petition for a writ of habeas corpus in the United States District Court for the Northern District of California. That matter was transferred to this district and assigned to the Honorable Thomas J. MacBride who, believing petitioner had made a prima facie showing, ordered the state to show cause why the writ should not be granted. After the state's filing, Judge MacBride took sen-

---

4. Hereinafter the Rules Governing Section 2254 Cases in the District Courts will be referred to as Rule (followed by the appropriate number) or Rules as appropriate.

ior status and, upon my appointment, the matter was transferred to me. I believed that the documents then before the court were insufficient in and of themselves to demonstrate a prima facie case and vacated that portion of the previous order. At that time I appointed counsel and ordered the record expanded pursuant to Rule 7. I also ordered the parties to file status reports preparatory to a status conference set pursuant to Rule 125 of the Local Rules of Practice of this district. *See* Order of March 27, 1980.

The state responded to the March, 1980 Order with a variety of motions disposed of in my Opinion and Order published at 496 F.Supp. 632 (E.D.Cal.1980). Responses to the interrogatories directed to the parties by the court in the order to expand the record were filed and status conferences were held in March 1981 and again in September 1981. At the latter conference "the parties stipulated that petitioner was in possession of evidence demonstrating a prima facie case sufficient to warrant this court issuing an order to show cause as to why a writ should not issue and that an evidentiary hearing is required to establish the facts underlying petitioner's case." Status Conference Order of September 29, 1981. The oral stipulation adverted to in the Status Conference Order was then embodied in a written stipulation which clarified the state's position. The subsequent written stipulation recognized that by so stipulating, the state "was not waiving any objections they (sic) had to the admissibility of any 'new' evidence offered by petitioner

in support of his claim for relief." Purporting to respond to this court's order of September 29, 1981, respondent has moved to dismiss.

I

## THE PROCEDURAL BASIS OF RESPONDENT'S MOTION

For the second time in this case respondent has filed a motion to dismiss without suggesting "any procedural basis for its motion." *Hillery v. Sumner*, 496 F.Supp. 632, 634 (E.D.Cal.1980). The court is somewhat frustrated by respondent's approach because, without being informed of the authority for the bringing of said motion, the court cannot be certain (a) whether it can be entertained and (b) if so, the standards which are to be applied in its disposition.[5] Despite the fact the issue was unaddressed in the respondent's moving papers, I believe that there is authority to bring on its motion.[6] Moreover, given the history of this case said motion, although it might be viewed as premature, may be entertained. I turn now to the history of this action and its effect on the resolution of this issue.

A. *When is a Motion to Dismiss a Habeas Corpus Petition Proper?*

■ As the procedural history noted above recites, I vacated Judge MacBride's finding of a prima facie case and requested an expansion of the record including answers to interrogatories. *See* Rule 7. While such a procedure is appropriate and

---

**5.** If this Opinion does nothing else, I hope it will disabuse the state of the notion that it may file a motion to dismiss in a habeas corpus proceeding whenever the spirit moves it to do so. On the other hand, to be fair to the Attorney General, the issue as to whether and when the state may move for dismissal appears never to have been directly discussed in any published opinion. This is not to say that such motions have not been recognized at least by implication. *See, e.g., Schnepp v. Hocker*, 429 F.2d 1096, 1098 (9th Cir. 1970). As this Opinion demonstrates, the problem is both subtle and complex. Since I failed to appreciate the complexity of the question involved in the first published opinion addressing this action, perhaps it is not surprising that the state also

failed to recognize the problem. The state's failure, and mine, may in part be occasioned by the undeniable fact that "[t]he procedure on applications for habeas corpus for state prisoners is a confusing amalgam, to be found in a variety of different sources." 17 Wright, Miller & Cooper, *Federal Practice & Procedure* Jurisdiction § 4268 at p. 93 (1978).

**6.** I pause here to note that although the court is, in this Opinion, filling in the gaps in the moving party's points and authorities, this should not be viewed as a precedent. It is a moving party's obligation in filing a motion to "state with particularity the grounds therefor." F.R.Civ.P. 7(b)(1).

well recognized, it is clear that the state's response to the request for information and the resulting expansion of the record does not itself constitute a formal response to the petition.[7] Thus, when I vacated the portion of Judge MacBride's order pertaining to a finding that a prima facie case existed, I in effect determined that it was uncertain whether the petition could be ruled on summarily. Accordingly, given the order, the state had no obligation to formally respond to petitioner's pleadings.

By its subsequent stipulation that petitioner possessed facts sufficient for a prima facie case, however, the state admitted that summary disposition was inappropriate. Such an admission requires that "the judge shall order the respondent to file an answer or other pleading ... or to take such other action as the judge deems appropriate." Rule 4. Following such an order the respondent must file an answer which "shall respond to the allegations of the petition. In addition, it shall state whether the petitioner has exhausted his state remedies...." Rule 5. Through the present motion the state asserts its position that petitioner has failed to exhaust his state remedies. The Advisory Committee Notes to Rule 5 suggest that "[a]n alleged failure to exhaust state remedies ... may be raised by a motion by the attorney general, thus avoiding the necessity of a formal answer as to that ground." Generally, the result of failure to exhaust is dismissal without prejudice. See Advisory Committee Note to Rule 4. Thus, a motion to dismiss, brought on in a timely manner after the court determines summary disposition is inappropriate but prior to answer,

appears to be a proper procedural device by which to test the issue.

Unfortunately, resolution of the question of the propriety of this motion is not quite as simple as the analysis set forth above suggests. It appears that a motion to dismiss may not be filed without leave of court. As noted, Rule 4 provides that upon the district judge's determination that summary disposition of a habeas petition is inappropriate "the judge shall order the respondent to file an answer or other pleading ... or to take such other action as the judge deems appropriate." In explaining the latter phrase the Advisory Committee observed, "This is designed to afford the judge flexibility in a case where either dismissal or an order to answer may be inappropriate. For example, *the judge may want to authorize* the respondent to make a motion to dismiss based upon information furnished by respondent, which may show ... that petitioner has failed to exhaust state remedies." (Emphasis added) Advisory Committee Notes to Rule 4.[8]

While at first glance it may appear odd that the detaining authority must first obtain court permission to move to dismiss, such a requirement is wholly consistent with the purpose and nature of the Great Writ. "[I]ts function has been to provide a prompt and efficacious remedy...", *Fay v. Noia*, 372 U.S. 391, 401–02, 83 S.Ct. 822, 828–829, 9 L.Ed.2d 837 (1963), and "its capacity [is] ... to cut through barriers of form and procedural mazes...." *Harris v. Nelson*, 394 U.S. 286, 291, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). As Mr. Justice Holmes observed, "[H]abeas corpus cuts through all forms and goes to the very

7. "While the district judge may ask the respondent for information or may entertain special pleadings designed to short circuit treatment of the substantive claims, nothing in the way of a formal response on the merits is required until after the court has determined that summary dismissal is inappropriate." Yackle, L., *Postconviction Remedies*, § 118 at p. 454 (1981).

8. As I will explain infra, the order to expand the record pursuant to Rule 7 is the device by which the court may allow the respondent to present such facts prior to a formal answer. Another possible scenario is that where the court has not ordered the expansion of the record or authorized a motion to dismiss, respondent may answer—and pursuant to Rule 5—state its position on exhaustion. If respondent believes that petitioner has not exhausted his remedies, it appears nothing would preclude the respondent from seeking leave of court to move to dismiss in conjunction with its answer. On the other hand, if this Opinion demonstrates anything, it should be that there are no simple and obvious answers to these questions.

tissue of the structure." *Frank v. Mangum*, 237 U.S. 309, 346, 35 S.Ct. 582, 594, 59 L.Ed. 969 (1915) (dissenting opinion). An unlimited right to move to dismiss would frustrate the swift functioning of the writ, delaying consideration of the question central to every habeas petition—whether the petitioner is held in custody in violation of the federal Constitution. "[A] habeas corpus proceeding must not be allowed to founder in a 'procedural morass'. [citations omitted]" *Harris v. Nelson*, 394 U.S. at 291–92, 89 S.Ct. at 1086.[9]

Yet another reason for requiring leave of court prior to making such a motion is inherent in the habeas process. Such a motion filed after Rule 4 scrutiny, or after expansion of the record, tests the prima facie validity of petitioner's showing. In habeas practice, however, the court has already examined petitioner's showing for facial sufficiency. *See* Rules 4 and 8. Thus it may be argued that such a motion is both unnecessary and inappropriate.[10]

In the instant case, this court has not authorized the filing of a motion to dismiss by respondent. Nevertheless, because the question of whether the court must grant leave to file such a motion has apparently not been previously resolved, it appears to me unfair to reject the motion on that basis. This conclusion is influenced by the realization that refusal to entertain the motion would only delay consideration of issues which, in any event, must be resolved.[11] Particularly persuasive in this regard is the fact that the issues to be resolved by this motion are purely legal in character. (See § III, infra). Having determined that the motion may properly be entertained, I now turn to the question of the proper standard to be applied.

B. *The Standard to be Applied to Respondent's Motion to Dismiss a Petition for Habeas Corpus.*

As has been seen, motion practice in habeas corpus is not specifically provided for in the rules but must be inferred from their structure and the Advisory Committee Notes. Accordingly, it is not surprising that the rules do not specifically provide for standards to be applied in resolution of such motions.

It appears to me that the standards to be applied to resolution of the motion must turn on the issues tendered by the motion and the material relied upon in support thereof. In this regard, three separate stages appear to emerge as distinctive demarcation points which may give rise to application of different standards. Those three stages are (1) where the respondent wishes to attack only the pleadings and the attachment to the pleadings, (2) after expansion of the record, (3) in conjunction with respondent's answer. Because this case deals with a motion after expansion of the record I now turn to that question.[12]

9. I do not mean to be misunderstood. As the two opinions in this case demonstrate, application of the appropriate procedure is crucial to a reasoned resolution of the writ, "for it is procedure that marks much of the difference between rule by law and rule by fiat." *Wisconsin v. Constantineau*. 400 U.S. 433, 436, 91 S.Ct. 507, 509, 27 L.Ed.2d 515 (1971). The point, however, is that what is contemplated is a speedy resolution of the underlying issue. *See, e.g.*, 28 U.S.C. § 2243 (specifying that the hearing shall be held in five days). An elaborate motion practice would simply frustrate that purpose.

10. Indeed, this fact has led at least one commentator to suggest that a motion practice analogous to Rule 12 is inapplicable in a habeas proceeding. 7 Moore's *Federal Practice* ¶ 81.-05[4] at pp. 81–58, 59 (1980). For the reasons suggested above, however, I believe a limited motion practice is appropriate.

11. Again the court does not wish to be misunderstood; the fact that in this instance the court will entertain the motion should not be considered an unlimited license to file motions to dismiss without leave of court.

12. I note in passing that it appears that a motion to dismiss attacking only the pleadings should be considered under Rule 4 standards since the effect of the granting of the motion is identical to such a disposition. *But see United States ex rel Escola v. Groomes*, 520 F.2d 830, 833 (3d Cir. 1975) (suggesting F.R.Civ.P. 12(b)(6) standards are applicable). As I have already noted, at least one commentator has suggested such a motion is wholly inappropriate in habeas practice. 7 Moore's *Federal Practice* ¶ 81.05[4] at 81–58, 59 (1980).

Historically habeas practice provided only two dispositions for petitions—summary dismissal or a full hearing. The drafters of the present rules believed that some cases, however, might be susceptible to an "intermediate" process through the device of an expanded record and so provided for such a procedure under Rule 7. "If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." Rule 7(a). "The purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing. . . . Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings." Advisory Committee Note to Rule 7.[13] Thus it seems clear that the court should only order expansion of the record when there is some reason to believe that the petition may be one properly subject to summary dismissal but the existing uncertainty cannot be resolved from the face of the petition and its exhibits. Alternatively, as the Advisory Notes to Rule 7 suggest, there may be a limited number of cases in which a small failure in the compiling of the state record may be resolved by an expanded record supplying facts sufficient to permit disposition without an evidentiary hearing.[14]

If, upon expansion of the record, the court perceives that some defect not apparent on the face of the petition may preclude a hearing on the merits (such as a failure to exhaust state remedies) the court may authorize a motion to dismiss (see § I, A, supra). This portion of the Opinion addresses the question of what standards should apply to resolution of such a motion. In the leading Supreme Court case addressing expansion of the record, the Court, without explanation, appeared to adopt wholesale the standards applicable to a motion for summary judgment under F.R. Civ.P. 56. *Blackledge v. Allison*, 431 U.S. 63, 80–81, 97 S.Ct. 1621, 1632, 52 L.Ed.2d 136 (1977). This has led various commentators to believe the summary judgment standards are either directly applicable under Rule 11, see Wright, Miller & Cooper, *Federal Practice & Procedure* Jurisdiction § 4268 at p. 694 (1978), or at least by analogy see 7 Moore's *Federal Practice* ¶ 81.05[4] at p. 81–66; *but see Yackle, supra* § 123 at p. 468 (raising the question but suggesting that habeas practice requires in almost all instances an evidentiary hearing). The commentators' response to *Blackledge* is somewhat puzzling. First, the Court's suggestion is clearly dicta and, second, the Court does not explain the reason for application of Rule 56 standards. The latter fact is particularly distressing since the application of the Federal Rules of Civil Procedure to habeas corpus cases is a persistent and perplexing problem.

Rule 11 does provide that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules." Nonetheless, the exact "fit" of the Federal Rules of Civil Procedure and habeas corpus practice is itself a complex question. *See Browder v. Director, Illinois Dept. of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978); *Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Harris v. Nelson*, 394 U.S. at 289 n.1, 89 S.Ct. at 1085. *See in particular* 7 Moore's *Federal Practice* ¶ 81.05[4]. Thus, the Court's unexplained suggestion of application of F.R.Civ.P. 56 to motions attacking habeas petitions is unlikely to be its final word on the subject. Nonetheless, I believe

---

13. Of course, in the event that summary disposition is not appropriate, "[a]n expanded record may also be helpful when an evidentiary hearing is ordered." Advisory Committee Note to Rule 7.

14. Routine resort to expansion of the record appears inappropriate to me because of the inevitable delay which must result from such an order. Moreover, "[W]hile the new procedure for expanding the record may be useful . . . [t]he evidentiary hearing . . . remains the ordinary course." Yackle, L., *Postconviction Remedies*, § 122 at pp. 468–69 (1981).

that application of Rule 56 standards is appropriate. Aside from *Blackledge* itself, two reasons make such a resolution appealing. First, courts have traditionally (if without explanation) applied F.R.Civ.P. 56 standards. *See Schnepp v. Hocker,* 429 F.2d at 1098; *Bowdidge v. Lehman,* 252 F.2d 366, 368 (6th Cir. 1958); *In re McShane's Petition,* 235 F.Supp. 262, 266 (N.D.Miss.1964); *Kleinhans v. Cady,* 314 F.Supp. 1276, 1278 (W.D.Wisc.1970); *Youngbear v. Brewer,* 415 F.Supp. 807 (N.D.Iowa 1976), *aff'd,* 549 F.2d 74 (8th Cir. 1977). Secondly, to the degree that a motion practice is at all acceptable in the habeas corpus context, it may not be inappropriate to examine such motions in light of the rules for civil procedure. Practice under those rules is relatively well understood and not unduly dilatory. By virtue of the expansion of the record, material outside the pleadings is being considered. Evaluation of such matter under the civil rules requires application of F.R.Civ.P. 56. See F.R.Civ.P. 12(b). *See also Schnepp v. Hocker,* 429 F.2d at 1098, n.1. I thus conclude that when a motion to dismiss is authorized subsequent to expansion of the record, it should be resolved by application of the standards applicable to motions under F.R.Civ.P. 56.

The standards under Rule 56 are well known.[15] To paraphrase them for purposes of habeas proceedings, it may be said that a motion to dismiss a petition for habeas corpus made after expansion of the record may only be granted when the matters on file reveal that there is no genuine issue of material fact "which if resolved in accordance with the petitioner's contentions would entitle him to relief ... [citation omitted]. Only if it appears from undisputed facts ... that as a matter of law petitioner is entitled to discharge, or that as a matter of law he is not, may an evidentiary hearing be avoided." *Wright v. Dickson,* 336 F.2d

878, 881 (9th Cir. 1964), *cert. denied,* 386 U.S. 1012, 87 S.Ct. 1360, 18 L.Ed.2d 444 (1967). Having resolved the issue of the procedures and standards applicable to this motion, I now turn to the exceedingly difficult application of that procedure to the instant case.

## II

## EXHAUSTION, EXPANSION OF THE RECORD AND EVIDENTIARY HEARINGS

Both the statute governing habeas corpus jurisdiction and the rules implementing the statutes require the exhaustion of available state remedies. 28 U.S.C. § 2254(b); Rule 5, and *see* the Advisory Committee Note thereto. For the exhaustion doctrine to be meaningful, it is clear that the petitioner must have presented to the state court essentially the same claim as that presented to the district court. *See, e.g., Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Accordingly, the courts of appeal have developed a rule that under certain circumstances petitioner's tendering of new facts relative to the resolution of a constitutional claim which were not presented to the state court, may justify a finding that he has failed to exhaust his state remedies. *See* § III, *infra.*

It is equally clear from both the statute and the rules, however, that a habeas petitioner is not limited to the record made in state court but that evidence can and, in some cases, must be taken. Moreover, under such circumstances, the district court must resolve disputed issues of fact. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C. §§ 2244, 2254; Rule 8.

■ By clear inference the material provided under an order to expand the record

15. Summary judgment is proper only where there are no genuine issues as to any material facts or where in viewing the evidence, and the reasonable inferences which may be drawn therefrom, in the light most favorable to the opposing party, the movant is entitled to prevail as a matter of law. *Jones v. Halekulani Hotel Inc.,* 557 F.2d 1308, 1310 (9th Cir. 1977);

*Stansifer v. Chrysler Motors Corp.,* 487 F.2d 59, 63 (9th Cir. 1973). It is also well settled that the moving party has the burden of establishing that this standard is satisfied. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *California Pacific Bank v. Small Business Administration,* 557 F.2d 218 (9th Cir. 1977).

may well contain factual matter not presented to the state court.

> The expanded record may include, without limitation, letters predating the filing of the petition in the district court, documents, exhibits, and answers under oath, if so directed, to written interrogatories propounded by the judge. Affidavits may be submitted and considered as part of the record.

Rule 7(b). That is, where the facts are not within the record as developed by the state court, the court may use Rule 7 to obtain additional materials to determine whether the allegations are meritorious. *See, e.g. Turner v. Chavez*, 586 F.2d 111, 113 (9th Cir. 1978).[16]

The obligation of a habeas petitioner to first fairly present the factual basis of his federal claim to the state court, when considered in conjunction with the power of a federal court to take evidence in addition to that received by the state court, leads to a conundrum. What happens when the new evidence was not presented to the state court? Must the federal court dismiss the petition and require petitioner to return to the state judiciary?

Neither the statute nor the rules directly address this question. Moreover, the parties have not cited to the court, nor has the court's independent research found, a single case which discusses the issue.[17] The problem is not without its difficulties; nonetheless, in the absence of definitive authority to the contrary, it appears that the purpose of an expansion of the record under Rule 7 provides guidance to a resolution of the issue.

As noted above, Rule 7 provides a procedural device, employment of which will permit disposition of a limited number of cases "not dismissed on the pleadings, without the time and expense required of an evidentiary hearing." Advisory Committee Note to Rule 7. Cases involving exhaustion of state remedies may fall within that narrow category. For instance, the petition may fail to reveal whether a given set of facts was presented to the state court. The federal court may order expansion of the record including the petitioner's briefs to the state appellate court. The court is then able to review that brief and is thus in possession of information unavailable to the court at the time of its Rule 4 scrutiny. If the now expanded record demonstrates a failure to exhaust state remedies, dismissal without prejudice should follow.[18] If, on the other hand, the expanded record demonstrates a genuine issue of fact as to exhaustion, then, by virtue of application of Rule 56 standards (*see* § I,B), dismissal is precluded.

A final observation in this regard is necessitated by the fact that the court will not grant the respondent's motion in this case (*see* § III, *infra*). If an evidentiary hearing is required and in the course of that hearing evidence emerges that demonstrates that the petitioner has failed to exhaust his state remedies, the court should nonetheless proceed to resolve the federal constitutional issue giving rise to the hearing. The reasons for this are numerous. First, it must be kept in mind that the exhaustion requirement is a matter of comity, not jurisdiction. *Fay v. Noia*, 372 U.S. at 418, 83 S.Ct. at 837; *Sweet v. Cupp*, 640 F.2d 233,

---

**16.** Thus, in *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), the Supreme Court permitted the district court to fashion rules for discovery in a case in which although a particular witness had testified in the state court proceeding, he was not questioned concerning the issue of the reliability of the informant—a relevant issue in the federal court habeas proceeding. *See*, particularly 394 U.S. at 304, 89 S.Ct. at 1093 (Harlan, J., dissenting).

**17.** This lack of authority is extremely puzzling. Although I consider the issue in the context of a Rule 7 expansion of the record, a procedure

of relatively recent vintage, the court's obligation to take evidence and resolve factual disputes is a venerable burden. *See Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

**18.** Obviously, I do not mean to suggest that the submission of *any* new fact requires a finding that the state remedies have not been exhausted and thus dismissal is required. The standards for when new facts demonstrate a failure to exhaust state remedies will be considered in the following section of this Opinion.

236 (9th Cir. 1981). Thus, there can be no doubt that the court has the power to resolve the constitutional issue tendered at the hearing. Second, common sense[19] considerations militate against dismissal of habeas petitions under such circumstances. It simply defies logic to assert that one likely result of granting an evidentiary hearing—namely that the district court will receive evidence not presented to the state court—requires dismissal for failure to exhaust.

Finally, considerations of judicial economy require that once a federal court has expended the resources which inevitably accompany an evidentiary hearing it should resolve the case. Considerations of judicial economy have traditionally been employed in resolving exhaustion problems. *See United States ex rel Lockett v. Illinois Parole & Pardon Bd.*, 600 F.2d 116, 117 (7th Cir. 1979) (an appeals court may refuse to dismiss for exhaustion of state remedies when an evidentiary hearing was held in the district court and dismissal would be wasteful of judicial energy); *Garrison v. McCarthy*, 653 F.2d 374, 376 (9th Cir. 1981) (where district court addressed the merits of at least one of state prisoner's exhausted claims, court of appeals would review the exhausted claims notwithstanding fact that petitioner had failed to exhaust state remedies with regard to other claims); *Little v.*

*Light v. Crist*, 649 F.2d 682, 684–85 (9th Cir. 1981) (where considerations of fairness and judicial economy dictate a federal court may hear exhausted issues even when unexhausted claims are present).

As has been said more than once, the doctrine of exhaustion was not designed to exhaust the petitioner but, rather, the state processes. *McShall v. Henderson*, 526 F.Supp. 158, 160 n.1 (S.D.N.Y.1981).

Against the background of the principles set forth above, I now examine whether the expanded record in this case demonstrates that this petitioner has failed to exhaust his state remedies.

### III

### NEW FACTS AND EXHAUSTION OF STATE REMEDIES

Respondent asserts that the expanded record contains evidence not presented to the state court and thus this court is required to dismiss this petition.[20] In particular, respondent objects to the expansion of the record to include census data from the year 1900,[21] three affidavits from residents of Kings County,[22] and a statistical analysis of the census data. Respondent characterizes this material as "new facts" and argues that its introduction so substantially transforms the petitioner's claim from that

19. Neither the cases, federal statutes, nor the rules "strip the district courts of all discretion to exercise their common sense." *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962).

20. As I have noted, the application of Rule 56 standards precludes granting a motion to dismiss if after the expansion of the record there is a material issue of fact. In the instant case there is no dispute as to the facts pertinent to the issue of whether petitioner exhausted his state remedies. The respondent acknowledges that petitioner previously raised the issue of the asserted systematic exclusion of Blacks from the Grand Jury which indicted him at his trial and in his appeal. *See People v. Hillery*, 62 Cal.2d 692, 44 Cal.Rptr. 30, 401 P.2d 382 (1965). The state asserts, however, that the petitioner seeks to present to this court facts bearing upon that issue which were not presented to the state courts and thus has failed to exhaust his state remedies. Petitioner concedes that if he is permitted to do so, he will

present evidence in this proceeding which was not presented to the state court. Nonetheless, he asserts that he has exhausted his remedies. By virtue of the answers to interrogatories and expansion of the record, the precise evidence that petitioner proffers can be ascertained. Accordingly, the question of exhaustion raised by this motion is a legal rather than a factual one.

21. The state court record contained population figures, based upon United States Census reports, for the years 1910, 1920, 1930, 1940, 1950, and 1960. Respondent claims that petitioner has introduced census figures for 1900 as well as those years listed above and used that data to establish the number of persons eligible to serve on the Grand Jury in question.

22. These three declarations speak to both the issue of the presence of Blacks on the Grand Jury during the applicable period as well as to the qualifications of Blacks in the county to serve on the Grand Jury.

presented in the state courts that he should be required to return to the state courts and exhaust the available remedies. Respondent's arguments are unpersuasive.

■ As I have previously observed, as a general rule a federal court will not entertain a state prisoner's petition for writ of habeas corpus unless the petitioner has exhausted available state judicial remedies. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438; *Sweet v. Cupp*, 640 F.2d at 235. In order to exhaust his available state remedies a petitioner must have "fairly presented" to the state court the claim that is the basis of his federal action. *Picard v. Connor*, 404 U.S. at 275, 92 S.Ct. at 512; *Carothers v. Rhay*, 594 F.2d 225, 228 (9th Cir. 1979). To satisfy this requirement the petitioner must have advanced the legal issue posed by this habeas petition in the state courts. Additionally, the crucial factual allegations presented in the federal habeas proceeding must have been before the state courts. *See e.g., Schiers v. People of State of California*, 333 F.2d 173, 175 (9th Cir. 1964); *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir. 1979); *Nelson v. Moore*, 470 F.2d 1192, 1197 (1st Cir. 1972), *cert. denied*, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973). It is to this latter question that respondent's motion is directed.

It has been said that the courts have not "always followed an unwavering line in [their] conclusions as to the availability of the Great Writ [and that] development of the law of federal habeas corpus has been attended, seemingly, with some backing and filling." *Fay v. Noia*, 372 U.S. at 411–12, 83 S.Ct. at 834. No area presents that picture more clearly than the issue posed by the "new facts" aspect of the doctrine of exhaustion of state remedies.[23] Nonetheless, certain general principles emerge.

First, exhaustion occurs when the petitioner's state court factual presentation "fairly" presented the issue now before the federal court. The test for "fair" presentation is whether the new material presents the petitioner's action in "a significantly different posture" from that considered by the state courts. *Nelson v. Moore*, 470 F.2d at 1197 (also noting that new allegations must be more than "bits of evidence."); *see also Domaingue v. Butterworth*, 641 F.2d 8, 12 (1st Cir. 1981) (new allegations must "transform [the] claim or cast it in a significantly different light."); *Daniels v. Nelson*, 453 F.2d 340, 342 (9th Cir. 1972) (the claim must be "wholly transformed" by the additional facts); *Schiers v. California*, 333 F.2d at 175 (claim must be "wholly transformed ... into quite a different problem"); *Hall v. Sumner*, 512 F.Supp. 1014, 1017 (N.D.Cal. 1981) (as long as claims are the substantial equivalent of those presented to the state courts they may be considered by the federal court on the merits).

Second, the standards for the application of the exhaustion requirement in habeas corpus proceedings, set forth above, must be considered in light of the nature and the purpose of the requirement. *Yackle, supra* at § 60, p. 256. As noted in § II, B, above, the exhaustion doctrine is a matter of comity, not jurisdiction. *Fay v. Noia*, 372 at 418, 83 S.Ct. at 837; *Sweet v. Cupp*, 640 F.2d at 236. The purpose of this doctrine of comity is "merely ... to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights. [citation omitted]." *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971); *see also Fay v. Noia*, 372 U.S. at 418–19, 83 S.Ct. at 837–838; *Sweet v. Cupp*, 640 F.2d at 236. Accordingly, development of new but non-dispositive facts does not in itself require a return to the state system. Thus, it has been held that "[t]here is, of course, no requirement that petitioner file repetitious applications to state courts." *Humphrey v. Cady*, 405 U.S. 504, 516, n.18, 92 S.Ct. 1048, 1055, 31 L.Ed.2d 394 (1972); *Thibodeau v.*

---

**23.** Indeed, the results are so disparate that at least one commentator has suggested that the cases may reflect no more than "the depth of commitment to the exhaustion doctrine residing with particular federal judges." *Yackle, supra* at § 60, p. 255.

*Commonwealth of Massachusetts,* 428 F.Supp. 542, 544 (D.Mass.1977).[24]

■ In summary, it may be said that the test is whether petitioner's new facts raise claims "so clearly distinct from the claims he has already presented to the state courts that it may fairly be said that the state courts have had no opportunity to pass on the claim. . . ." *Humphrey v. Cady,* 405 U.S. at 516, n.18, 92 S.Ct. at 1055, n.18. The respondent asserts that the new evidence "dramatically changes" the claim presented by petitioner. A calm examination of the evidence, both piece by piece and cumulatively, requires rejection of the state's argument.

■ As noted above, respondent objects to the introduction of census data from the year 1900 as well as the affidavits of three (3) Kings County residents in which they assert that to their knowledge a Black person has not served on the Grand Jury in that county.

This evidence, however, is relevant only to the question of whether a Black person had ever served upon a Grand Jury in Kings County. The California Supreme Court, in reviewing petitioner's conviction, found that it was undisputed that no Black had ever served upon a Grand Jury in Kings County from its inception until the time of the Opinion. In this regard the Court stated:

24. Indeed, in the instant case it should be remembered that in addition to petitioner's motion at trial, he has twice been before the California Supreme Court on the same issue as presented here. Clearly, if that Court believed that an additional factual basis was required it could have ordered a hearing on the issue itself. *See* California Constitution Art. VI, § 10. This remark is particularly pertinent since the evidence at issue here was the result of this court's order to expand the record.

25. The California Supreme Court's finding that no Blacks had ever served on the Kings County Grand Jury at the time of the petitioner's indictment is entitled to great deference by this court and is presumptively correct unless it is demonstrated that it is suspect under one of the statutorily designated circumstances. *See Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981); *Fritchie v. McCarthy,* 664 F.2d 208, 213 (9th Cir. 1981);

Here the record shows that affidavits in support of and in opposition to defendant's motions were filed, and a hearing was held at which evidence was taken. *Defendant sought to prove that no Negro had served on a Kings County grand jury since 1893, the year in which the county was organized. The People did not dispute this fact,* but introduced evidence based on official census records establishing that in 1960 Negroes constituted only 5.1 per cent of the total population of Kings County, and that prior to World War II the proportion had been 1 per cent or less.

*People v. Hillery,* 62 Cal.2d 692, 709, 44 Cal.Rptr. 30, 401 P.2d 382 (1965), *cert. denied,* 386 U.S. 938, 87 S.Ct. 958, 17 L.Ed.2d 810 (1967) (Emphasis added.).[25]

Thus, to the extent respondent asserts that evidence relevant only to the question of whether Blacks had served on the Kings County Grand Jury is of such a character as to dramatically change the claim which petitioner presented to the state courts, his objection is meritless. Certainly under the legal standards set forth above, it cannot be persuasively argued that this information fundamentally changes the substance of petitioner's claim thus requiring that he return to the state courts. The most that one could say about this information is that it is cumulative on the issue of whether Blacks had ever served on the Kings County Grand

*see also* 28 U.S.C. § 2254(d). The "facts" embraced by this doctrine are the "basic, primary, or historical facts" only. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); *Townsend v. Sain,* 372 U.S. at 309, n.6, 83 S.Ct. at 755. Thus, the federal court is not to presume the correctness of the state court's legal conclusions. *Townsend v. Sain,* 372 U.S. at 318, 83 S.Ct. at 759. Moreover, the presumption of correctness does not apply to mixed questions of law and fact, requiring the application of legal/constitutional principles to the basic or historical facts. *Brown v. Allen,* 344 U.S. 443, 507, 73 S.Ct. 397 [*Daniels v. Allen*], 437, 446, 97 L.Ed. 469 (1953); *Townsend v. Sain,* 372 U.S. at 309, n.6, 83 S.Ct. at 755; *Cuyler v. Sullivan,* 446 U.S. at 342, 100 S.Ct. at 1714; *Mata v. Sumner,* 649 F.2d 713, 716 (9th Cir. 1981); *Pierre v. Thompson,* 666 F.2d 424, at 427 (9th Cir. 1982).

Jury, a fact not in dispute either here or in the state courts.

Respondent also argues that to the extent the affidavits of the three Kings County residents, offered by petitioner, address the issue of the competency of Black persons to serve as grand jurors during the relevant period, "new evidence" has been presented requiring petitioner to return to state court. Again, the opinion of the California Supreme Court reflects that evidence relative to the competency of Black persons in the area to serve as grand jurors was before the state courts. In this regard the Supreme Court stated,

> The judge pointed out that he had previously asked defendant's counsel to suggest the names of Negro residents who might be qualified to serve, and had considered selecting a Mr. Lloyd Welcher but declined to do so after determining that the duties would interfere with the latter's regular employment.

*People v. Hillery*, 62 Cal.2d at 710, 44 Cal. Rptr. 30, 401 P.2d 382. Thus, to the extent that material has been presented to the court relative to the competence of Blacks to serve on the Grand Jury, the affidavits in question can also only be characterized as cumulative. Based upon the legal standards set forth above, the presence of these affidavits in the expanded record does not require that petitioner return to state court to exhaust available remedies.

■ The use of census data to establish a population of persons eligible to serve on the Kings County Grand Jury during the applicable period and the computer analysis thereof raises a somewhat different issue. As an initial matter it is important to note that although the state court factual determinations are to be presumed correct,[26] it is the federal district court's duty to independently apply the applicable federal law to the state court factual findings. *Townsend*

*v. Sain*, 372 U.S. at 318, 83 S.Ct. at 759; *Brown v. Allen*, 344 U.S. 443, 507, 73 S.Ct. 397 [*Daniels v. Allen*], 437, 446, 97 L.Ed. 469 (1953); *Mata v. Sumner*, 649 F.2d 713, 716 (9th Cir. 1981). In the present case petitioner's federal claim is based upon his allegation that Blacks were systematically excluded from the Grand Jury which indicted him. In applying the applicable federal law, the Equal Protection Clause of the fourteenth amendment, to such claims the Supreme Court has observed that: "This Court has never announced mathematical standards for the demonstration of 'systematic' exclusion of blacks but has, rather, emphasized that a factual inquiry is necessary in each case that takes into account all possible explanatory factors." *Alexander v. Louisiana*, 405 U.S. 625, 630, 92 S.Ct. 1221, 1225, 31 L.Ed.2d 536 (1972); *see also, Castaneda v. Partida*, 430 U.S. 482, 496, n.17, 97 S.Ct. 1272, 1281, n.17, 51 L.Ed.2d 498 (1977); *Guice v. Fortenberry*, 661 F.2d 496, 505 (5th Cir. 1981) (en banc). Thus, the statistical analysis of census data is not in and of itself dispositive of the legal issue before the court. Therefore, to the extent that respondent argues that such evidence works a fundamental change upon petitioner's claim because it is of a dispositive nature, the state is incorrect. More importantly, however, is the fact that respondent's arguments misconstrue the nature of the evidence in question. The testimony proffered by petitioner is simply an expert analysis of evidence already before the court and is not, in this sense, "new evidence." In this regard it seems relatively clear that the statistical analysis of census data is the kind of information designed to make the facts relative to the absence of Blacks on grand juries significant, *i.e.* to aid the trier of fact in understanding the evidence before the court.[27]

---

**26.** See n.24, *infra.*

**27.** To the extent the material presented by petitioner as part of the supplemented record is merely an analysis of the import of the evidence already before the court, Federal Rule of Evidence 702 frames the resolution of the issue posed by respondent. Rule 702 provides that,

"If scientific, technical, or other specialized knowledge will assist the trier of fact *to understand the evidence* or to determine a fact in issue ... an expert ... may testify thereto in the form of opinion or otherwise." (Emphasis added).

It is apparent that in *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536, and *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498, statistical analysis was used by the Court in determining whether a disparity between the percentage of a discrete minority group in the population at large and the percentage of that group represented on the Grand Jury was the result of chance or was indicative of systematic discrimination. The statistical analysis of census data is, therefore, an interpretive aid for use by the court rather than "new evidence" as it is characterized by respondent. It is precisely this type of analysis which must be considered by the federal court in performing its duty of independently applying federal law to the facts as found by the state court. Accordingly, the court holds that the introduction of the analysis of census data does not so fundamentally change the character of petitioner's claims that he must return to the state courts.

## IV

### PRIMA FACIE CASE

■ Respondent's motion may also be read as asserting that petitioner has failed to state a prima facie case of discrimination in violation of the fourteenth amendment. If respondent is making such an argument it is unsupported by the case law. The United States Supreme Court has clearly set forth the requirements for a prima facie case by a petitioner claiming the systematic exclusion of members of his race from the Grand Jury returning his indictment. In this regard the Court has stated that,

> [I]n order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. *Hernandez v. Texas*, 347 U.S. [475], at 478–479, 74 S.Ct. 667 [at 670–671] 98 L.Ed. 866. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. Id., at 480, 74 S.Ct., at 671, 98 L.Ed. 866. See *Norris v. Alabama*, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935). This method of proof, sometimes called the "rule of exclusion," has been held to be available as a method of proving discrimination in jury selection against a delineated class. *Hernandez v. Texas*, 347 U.S. at 480, 74 S.Ct., at 671, 98 L.Ed. 866. Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. *Washington v. Davis*, 426 U.S. [229], at 241, 96 S.Ct. 2040 [at 2048] 48 L.Ed.2d 597; *Alexander v. Louisiana*, 405 U.S. [625], at 630, 92 S.Ct. 1221 [at 1225] 31 L.Ed.2d 536. Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

*Castaneda v. Partida*, 430 U.S. at 494–95, 97 S.Ct. at 1280.

In the present case petitioner has alleged that he belongs to a recognizable and distinct racial group (Blacks), that there had never been a member of this racial group on the Kings County Grand Jury at the time of his indictment (alleged underrepresentation over a significant period of time), and that the grand jurors were hand-picked by the presiding judge (method of selection susceptible to abuse). Thus, petitioner's allegations are sufficient to support a prima facie case and preclude the summary dismissal of the petition.[28] *See Blackledge v.*

---

28. Respondent's argument that petitioner has failed to state a prima facie case would appear to be inconsistent with his earlier stipulation that a prima facie case had been established. *See* Court Order of September 29, 1981; Stipulation of Counsel of October 14, 1981. None-

*Allison*, 431 U.S. at 75–76, 97 S.Ct. at 1629–1630 *see also*, Rule 4. Therefore, respondent's motion to dismiss on the grounds that petitioner has failed to state a prima facie case must be denied.[29]

## V

## THE NECESSITY OF AN EVIDENTIARY HEARING

In the present case petitioner, having expanded the record, is willing to submit the matter on that record. Respondent, however, argues that if its motion to dismiss is denied it desires an evidentiary hearing for the purpose of testing the truth of the matters proffered through the expanded record.

▉ The Ninth Circuit has recently explained when and under what circumstances an evidentiary hearing is mandated. *See Little Light v. Crist*, 649 F.2d at 685–86. Nonetheless, in determining the availability and necessity of an evidentiary hearing it is important to note that the power of the federal court in habeas corpus proceedings is plenary. *Townsend v. Sain*, 372 U.S. at 312, 83 S.Ct. at 756. The court's power to take evidence relevant to claims of unconstitutional detention has been repeatedly upheld. *Id.* at 311, 83 S.Ct. at 756. Thus, even where not otherwise mandated, the federal court has the discretion to hold an evidentiary hearing particularly where material issues of fact are in dispute as is the case here. *Id.* at 318, 83 S.Ct. at 759; *White v. Estelle*, 556 F.2d 1366, 1368, n. 4 (5th Cir. 1977); *see also* Advisory Committee Note to Rule 8. Thus, in the present case even if an evidentiary hearing is not mandatory,[30] certainly it is within the court's discretion to grant one. This is particularly true given the nature of the dispute concerning the material contained in the expanded record. An evidentiary hearing here is appropriate to guarantee that both respondent and petitioner are afforded fair treatment. Such a guarantee can only be made if both are allowed to argue and present evidence to the court on the issue of the accuracy and weight of the materials constituting the expanded record in this action. Respondent will be allowed to cross-examine any witnesses produced by petitioner and call its own witnesses at said hearing.

## CONCLUSION

For all the above reasons, respondent's motion to dismiss is denied. Respondent is to file an answer not later than fifteen (15) days from the date of this Opinion and Order. The answer shall address both the petition originally filed and the expanded record. An evidentiary hearing to test the issues proffered by the petition and expanded record is now set to commence on April 28, 1982, at 9:00 a. m.

IT IS SO ORDERED.

---

theless, the resolution of this issue on the merits is straightforward rendering reference to the prior stipulations unnecessary.

**29.** To the extent respondent asserts that *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 requires that the state court findings be shown suspect under one of the statutorily designated circumstances before petitioner can be said to have made a prima facie case, the state confuses the scope of the deference due the state court findings. Deference is properly accorded merely to the state courts' factual findings. *See* n.24, *infra*.

**30.** It may be argued that an evidentiary hearing is mandatory in this case due to the dispute between the parties as to a material issue of fact. *Townsend v. Sain*, 372 U.S. at 312, 83 S.Ct. at 756. Alternatively, it could be argued that the existence of material facts not adequately developed in the state court hearing requires that an evidentiary hearing be held. *See* 28 U.S.C. § 2254(d)(3); *but see Yackle, supra* at § 130, pp. 493–495. Clearly, however, it is within the court's discretion to order such a hearing under the circumstances of this case.